UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                      :

GURPREET SINGH,                        :
                                      :
               Petitioner,        :               20 Civ. 9089 (JPC)
                                      :
          -v-                       :       <u>OPINION AND ORDER</u>
                                      :

THOMAS DECKER et al.,          :
                                      :
              Respondents.      :
                                      :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Petitioner Gurpreet Singh ("Singh") petitions for a writ of habeas corpus, pursuant to 28

U.S.C. § 2241, challenging his present detention pending removal proceedings. *See* Dkt. 2 (Petition

for Writ of Habeas Corpus) ("Pet." or "Petition"). Singh, who is housed at the Bergen County Jail

in Hackensack, New Jersey, seeks from this Court an order primarily directing Respondents to

immediately release him or provide him a bond hearing in immigration court to address his

continued detention. Respondents filed a Motion to Dismiss or to Transfer the Case to the District

of New Jersey ("Motion to Dismiss") on November 30, 2020. Dkts. 9, 10, 11. For the reasons that

follow, the Court grants Respondents' motion to transfer this case to the United States District Court

for the District of New Jersey.

## I.  Background

      Singh, a native and citizen of India, was admitted to the United States as a lawful permanent

resident on March 10, 2008. *See* Pet. ¶ 10; Dkt. 10 (Declaration of Deportation Officer Christopher

H. Schultz, Nov. 30, 2020) ("Schultz Decl.") ¶¶ 3, 4. On April 19, 2012, Singh became a naturalized

United States citizen. Schultz Decl. ¶ 5. Very shortly thereafter, Singh was arrested in Watertown,

New York on a New York state charge of committing sexual abuse in the first degree, an offense

which entails sexual contact with an individual younger than 11 years old. *See* Pet. ¶ 12; Schultz

Decl. ¶ 6. That charge was resolved when Singh pleaded guilty on August 16, 2012 to sexual abuse

in the second degree, an offense which entails sexual contact with a person less than 14 years old,

resulting in a sentence of six years' probation (the "2012 State Conviction"). Pet. ¶ 13; Schultz

Decl. ¶ 6. Singh was released from probation in March 2015. Pet. ¶ 14, Exh. A.

On March 3, 2016, Singh was arrested in connection with an indictment returned in the

United States District Court for the Northern District of New York, which charged him with

unlawful procurement of naturalization in violation of 18 U.S.C. § 1425(a), (b). *United States v.*

*Singh*, No. 5:16 Crim. 63 (NAM) (N.D.N.Y.), Dkts. 1 (Indictment), 9 (Arrest Warrant); Pet. ¶ 15.

That federal indictment alleged that Singh provided false and fraudulent information to U.S.

Department of Homeland Security's ("DHS's") U.S. Citizenship and Immigration Services in his

application for citizenship by certifying that he had not committed any crimes for which he had not

been arrested, when Singh knew that he had previously sexually molested a minor. *See Singh*, No.

5:16 Crim. 63, Dkt. 1; Pet. ¶ 15. On January 2017, a jury found Singh guilty of violating 18 U.S.C.

§ 1425(a), (b), and on July 11, 2017, the district court sentenced him to three months' imprisonment,

followed by three years of supervised release (the "2017 Federal Conviction"). *Singh*, No. 5:16

Crim. 63, Dkts. 55 (Jury Verdict), 66 (Judgment); Pet. ¶ 16; Schultz Decl. ¶ 7. The district court

also granted the Government's motion to revoke Singh's citizenship. *Singh*, No. 5:16 Crim. 63,

Dkt. 68; Pet. ¶ 16; Schultz Decl. ¶ 7.

On October 27, 2017, and after Singh completed the three-month term of imprisonment on

the 2017 Federal Conviction, Singh was arrested by federal agents with the DHS's Immigration

and Customs Enforcement ("ICE"). Pet. ¶ 17; Schultz Decl. ¶ 8. ICE charged Singh as removable

under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §

1227(a)(2)(A)(iii), as an alien who, after admission, has been convicted of an aggravated felony as

defined in section 101(a)(43)(A) of the INA, 8 U.S.C. § 1101(a)(43)(A), and as removable under section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), as an alien who has been convicted of a crime of child abuse.  Pet. ¶ 18; Schultz Decl. ¶ 8.  Removal proceedings were initiated in immigration court in New York.  Schultz Decl. ¶ 8.  Singh has been detained at the Bergen County Jail in Hackensack, New Jersey, pending those removal proceedings, which remain ongoing.  *Id.* ¶¶ 8-10.[1]

On or about June 26, 2018, the immigration court entered a removal order against Singh.  Pet. ¶ 19.  Singh asserts that, a few months later, in September 2018, he filed a motion in Jefferson County Court in Watertown, New York, pursuant to New York Criminal Procedure Law section 440.10 to vacate the 2012 State Conviction on ineffective assistance of counsel and newly discovered evidence grounds.  Pet. ¶ 20.  Singh further contends that, on February 6, 2019, Judge Kim H. Martusewicz of the Jefferson County Court granted his section 441.10 motion and vacated the 2012 State Conviction, *id.*, which Respondents do not seem to dispute, *see* Schultz Decl. ¶ 6.

After vacatur of the 2012 State Conviction, Singh moved before the Board of Immigration Appeals ("BIA") to remand his case back to the Immigration Judge ("IJ") due to changed circumstances.  Pet. ¶ 21, Exh. C.  DHS also moved to remand to file an additional charge of removability based on a separate criminal conviction, namely, the 2017 Federal Conviction.  *Id.*, Exh. C.  DHS lodged that additional charge of removability on or about March 13, 2019.  *Id.*, Exh. D.  Singh contends that, on or about September 26, 2019, the IJ denied his request for relief after conducting a bail hearing.  *Id.* ¶ 24.  On February 25, 2020, the BIA dismissed Singh's appeal of the IJ's bond order, affirming the IJ's conclusion that Singh would pose a danger to the community if released.  *Id.* ¶ 26, Exh. E.   In addition, on June 26, 2020, the BIA dismissed Singh's appeal of

---

[1]  Singh contends, and Respondents do not dispute, that the Bergen County Jail houses immigration detainees pursuant to a contract with ICE.  Pet. ¶ 1.

the IJ's denial of his application for adjustment of status, thereby rendering his removal order administratively final.  *Id.* ¶¶ 27, 30, Exh. G; Schultz Decl. ¶ 9.  On July 9, 2020, Singh petitioned for a review of the BIA's decision in the United States Court of Appeals for the Second Circuit.  *See Singh v. Barr*, No. 20-2168 (2d. Cir.); Pet. ¶ 31.  That petition is pending before the Second Circuit.

Singh filed the instant petition with this Court on October 29, 2020, Dkt. 2, while he was detained at the Bergen County Jail, Schultz Decl. ¶ 10.[2]  In his Petition, Singh asserts that his current detention is unlawful, citing the Fourth, Fifth, and Eighth Amendments of the U.S. Constitution.  Pet. ¶¶ 47, 49.  Singh additionally alleges that he has received inadequate medical treatment at the jail since he first felt ill on September 2019.  *Id*. ¶¶ 33-41.  Singh names as Respondents: Thomas Decker, the Director of ICE's New York Office; Michael M. Russo, the Warden of the Bergen County Jail; Chad Wolf, the Acting Secretary of DHS; and William Barr, then the Attorney General of the United States.  As relief, Singh seeks primarily immediate release from custody or a bond hearing in immigration court.  *Id*. ¶ 51.  Respondents filed their Motion to Dismiss on November 30, 2020.  Dkts. 9, 10, 11.  After the Court granted Singh's application for appointment of counsel pursuant to 18 U.S.C. § 3006(A)(g), Dkt. 13, Florian Miedel, Esq., appeared in this case to represent Singh.  Through counsel, Singh opposed the Motion to Dismiss on December 18, 2020, Dkt. 17 ("Opp."), and Respondents filed a reply brief on December 23, 2020, Dkt. 18.

## II.  Discussion

Before the Court can assess the merits of Singh's petition, it must first determine whether venue is proper in this District.  A federal court can only grant a habeas petition "within [its] respective jurisdiction[]."  28 U.S.C. § 2241(a).  Whether or not a court has jurisdiction is based on

---

[2] ICE records reflect that Singh was still detained at the Bergen County Jail as of November 30, 2020, and that he was last physically present in New York on November 21, 2019 for a medical appointment.  Schultz Decl. ¶ 10.

4

the location of the respondent, which is "the person who has custody over [the petitioner]." *Id.* §
2242.

In *Rumsfeld v. Padilla*, the Supreme Court noted that the statute's use of a definite article in
"the person," § 2242, "indicates that there is generally only one proper respondent," 542 U.S. 426,
434 (2004), and that person is someone with "*immediate custody*" of the petitioner, *id.* at 435
(emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).  Therefore, the
"default rule" for "habeas challenges to present physical confinement"—commonly known as
"core" habeas challenges—"is that the proper respondent is the warden of the facility where the
prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.*  In
order to exercise jurisdiction over a habeas petition, a court therefore must determine whether it has
jurisdiction over the respondent.  *See id.* at 443.  And the "general rule" for "core" habeas petitions
is that "jurisdiction lies in only one district: the district of confinement." *Id.*  The Supreme Court,
however, explicitly declined to decide in *Padilla* whether the Attorney General could be the proper
respondent in immigration cases, noting that the "issue [was] not before [the Court]" in that case.
*Id.* at 435 n.8.

Following *Padilla*, courts in this District have split on whether the proper respondent in a
case like this—where a petitioner is detained in a state facility pursuant to the facility's contract
with ICE and challenges his or her detention pending removal—is the warden of the state facility
or an ICE official.  The majority have found that *Padilla* applies with equal force, and such "core"
habeas immigration proceedings are properly brought in the district of confinement.  *See, e.g.*,
*Darboe v. Ahrendt*, 442 F. Supp. 3d 592, 595-96 (S.D.N.Y. 2020); *Sanchez v. Decker*, No. 19 Civ.
8354 (RA), 2019 WL 6311955, at *3-4 (S.D.N.Y. Nov. 25, 2019); *Golding v. Sessions*, No. 18 Civ.
3036 (RJS), 2018 WL 6444400, at *3 (S.D.N.Y. Dec. 6, 2018); *Almazo v. Decker*, No. 18 Civ. 9941
(PAE), 2018 WL 5919523, at *2 (S.D.N.Y. Nov. 13, 2018); *Chan Lo v. Sessions*, No. 17 Civ. 6746

(GHW), 2017 WL 8786850, at *1 (S.D.N.Y. Sept. 15, 2017); *Singh v. Holder*, No. 12 Civ. 4731 (JMF), 2012 WL 5878677, at *2 (S.D.N.Y. Nov. 21, 2012); *Guo v. Napolitano*, No. 09 Civ. 3023 (PGG), 2009 WL 2840400, at *3-5 (S.D.N.Y. Sept. 2, 2009); *Shehnaz v. Ashcroft*, No. 04 Civ. 2578 (DLC), 2004 WL 2378371, at *4 (S.D.N.Y. Oct. 25, 2004).  A number of other courts in this District have disagreed, finding that those "core" immigration habeas petitions are properly brought outside the district of confinement, principally relying on the contractual nature of ICE agreements with local facilities.  *See, e.g.*, *Grant v. Decker*, No. 20 Civ. 2946 (AKH), 2020 WL 3402445, at *3 (S.D.N.Y. June 19, 2020); *Arias v. Decker*, 459 F. Supp. 3d 561, 567-69 (S.D.N.Y. 2020); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 952-53 (S.D.N.Y. 2018).

As a preliminary matter, the Court holds that the instant petition is a "core" habeas challenge.  In the immigration context, "non-core" challenges are "challenges to forms of custody other than physical confinement, including orders of removal."  *Heller v. Barr*, No. 19 Civ. 4003 (ER), 2019 WL 2223183, at *1 (S.D.N.Y. May 22, 2019).  The distinction between core and non-core proceedings "is a sound one, since 'if the challenged custody is physical detention, then the immediate, physical custodian is the proper respondent. . . .  If, on the other hand, the petition challenges a broader form of legal, non-physical custody, then the proper respondent is the person with legal authority to effect that custody.'" *Sanchez*, 2019 WL 6311955, at *3 (quoting *S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 407 (S.D.N.Y. 2018)).  Singh's challenge to the lawfulness of ICE's custody of him, seeking his immediate release, is a challenge to his physical detention.  Singh's request for a bond hearing before the IJ similarly is a "core" challenge, as it directly concerns his physical detention and may ultimately result in his release from such detention.  *See Darboe*, 442 F. Supp. 3d at 594-95 ("[B]ecause [petitioner's] challenge goes directly to his continued detention, the Court finds that [petitioner] raises a 'core' habeas challenge."); *Sanchez*, 2019 WL 6311955, at *3 (rejecting petitioner's argument that "his petition is not a 'core' habeas petition because he only

challenges the fact that Respondents have detain[ed] him without providing him a bond hearing" (internal quotation marks omitted)); *Benitez v. An Unknown Immigration Officer*, No. 19 Civ. 3153 (GHW), 2019 WL 3450743, at *1 (S.D.N.Y. July 22, 2019) ("Petitioner's 'core' challenge relates to his continued confinement without the opportunity to post bond."); *Golding*, 2018 WL 6444400, at *2 ("[T]he Court concludes that Petitioner's request for a bond hearing is essentially a challenge to his current immigration detention and therefore falls within the ambit of 'core' proceedings."); *Gomez v. Decker*, No. 18 Civ. 4009 (KPF), Dkt. 63 at 9:14-19 ("The reason [petitioner] seeks a bond hearing is to be released from physical custody. While there may be some distinctions metaphysically between requesting release from detention on the one hand, and requesting a bond hearing in order to be released on the other . . . it is a distinction without a difference."). The Court therefore holds that this Petition is a "core" proceeding that falls squarely within *Padilla*'s holding.

Singh, however, urges the Court to adopt the minority position and assert jurisdiction over this matter, notwithstanding his detention outside of this District. Singh advances several arguments in support of his position, none of which the Court finds persuasive.

Singh first argues that the Court should "analyze[] the true nature of [his] situation" and "conclude[] that the warden[] of the local New Jersey jail[] ha[s] custody over [him] in name only." *See* Opp. at 3. Singh asserts that Respondent Decker, as the head of ICE's New York Office, is the federal official with ultimate authority over his custody, and therefore falls within *Padilla*'s definition of "immediate custodian." *Id.* Construing the Warden of the Bergen County Jail to be his immediate custodian, argues Singh, is a "legal fiction," *id.* at 5, as the Warden is merely "an agent of the ICE regional director" with "no literal power to produce the petitioner," *id.* at 3. Singh cites to *Cruz v. Decker*, No. 18 Civ. 9948 (GBD) (OTW), 2019 WL 4038555, at *3-4 (S.D.N.Y. Aug. 27, 2019), *aff'd*, 2019 WL 6318627 (S.D.N.Y. Nov. 26, 2019), where the Court analyzed an ICE detainee handbook to hold that ICE is the immediate custodian in these circumstances.

7

Additionally, Singh cites to *Rodriguez Sanchez v. Decker*, 18 Civ. 8798 (AJN), 2019 WL 3840977, at *2 (S.D.N.Y. Aug. 15, 2019), where the Court relied on the contractual relationship between the federal government and the Bergen County Jail to hold that the proper respondent was the federal official in this District.

This Court is not persuaded. "The substantial majority of judges in this District to consider this question have . . . [held] that a defendant detained in New Jersey who seeks to challenge his detention, even if under the supervision of ICE personnel in this District, must bring a habeas action in the District of New Jersey." *Andoh v. Barr*, No. 19 Civ. 8016 (PAE), 2019 WL 4511623, at *2 (S.D.N.Y. Sept. 18, 2019). The Supreme Court in *Padilla* emphasized that the proper respondent is the individual with the "day-to-day control" over the petitioner's physical custody. *Padilla*, 542 U.S. at 439. The person with "day-to-day" control over Singh's physical custody is the Warden of the Bergen County Jail, Michael Russo. *See* Schultz Decl. ¶ 11 ("Michael Russo is the Warden with the Bergen County Sheriff's Office and the officer in charge of the correctional facility. Mr. Russo exercises direct physical custody and physical control over Singh while he is detained at the Bergen County Jail."). Nor is Warden Russo's authority a mere "legal fiction." A federal court's order to produce a petitioner pursuant to the habeas statute "may not be derogated by agency regulations, or, even less authoritatively, an agreement between federal and state authorities." *Lizardo v. Whitaker*, No. 18 Civ. 8476 (VEC), 2018 WL 6444371, at *3 (S.D.N.Y. Dec. 5, 2018); *see also Augustin v. Decker*, No. 20 Civ. 4862 (LJL), 2020 WL 5640061, at *1 (S.D.N.Y. July 8, 2020) ("The United States District Court for the District of New Jersey surely has the power to compel the warden to release [the petitioner], notwithstanding any contractual relationship between the warden's facility and ICE."). As the Court observed in *Darboe*, "neither the ICE Handbook nor the ICE Standards change[] this Court's determination that . . . the warden of the Bergen County

Jail[] is quite literally [petitioner's] immediate custodian." 442 F. Supp. 3d at 595.[3]  To hold that Decker is a proper respondent in this case would be to give new life to the legal control theory squarely rejected in *Padilla*.  This Court declines to do so, and instead affirms that the proper respondent is the individual with immediate control over Singh—here, Russo, the Warden of the Bergen County Jail.

Singh also describes the majority view as "unnecessarily strict and inflexible, especially since the Supreme Court made clear that its 'default rule' was not mandatory in every circumstance and explicitly declined to decide whether its rule applied in the immigration context."  Opp. at 4. Singh further argues that the Supreme Court in *Padilla* was concerned with the liability of "'remote supervisory official[s],'" and maintains that this concern is absent here, as there are clear ties between Singh's detention and the ICE officials operating in this District.  *Id.* (alteration added) (quoting *Padilla*, 542 U.S. at 435).  This Court disagrees.  Although the Supreme Court in *Padilla* declined to decide if the immediate custodian rule applies in immigration cases, "[a]s aptly stated by Judge Failla of this District [in *Gomez*], 'footnote 8 of the *Padilla* opinion . . . does not mean that the Court suggested that it would apply a different line of reasoning in the immigration context. Instead the Court merely declined to address the question because the issue was not before it.'" *Sanchez*, 2019 WL 6311955, at *3 (quoting *Sow v. Whitaker*, No. 18 Civ. 11394 (GBD) (RWL), 2019 WL 2023752, at *3 (S.D.N.Y. May 8, 2019)).  And as the *Padilla* Court noted, "the [habeas]

---

[3] Even if this Court was to find that Warden Russo lacks authority to release Singh, *Padilla* would still be controlling.  *See Sanchez*, 2019 WL 6311955, at *4 ("[T]he fact that the warden may not have the ultimate authority to release the petitioner or provide him with a bond hearing does not mean that the warden is not the individual's immediate custodian."); *Benitez*, 2019 WL 3450743, at *2 ("Petitioner emphasizes that the warden of the [local jail] does not have the authority to release him.  But that is surely true in many cases in which the immediate custodian rule applies, and it does not change the applicability of the rule."); *Salcedo v. Decker*, No. 18 Civ. 8801 (RA), 2019 WL 339642, at *2 (S.D.N.Y. Jan. 28, 2019) (finding the warden to be petitioner's immediate custodian despite the jail being contractually required to "receive and discharge INS detainee(s) only from and to properly identified INS officer(s)").

statute itself makes no such distinction based on the source of the physical detention." 542 U.S. at 437. Accordingly, this Court concludes that *Padilla*'s default rule for "core" habeas petitions is equally applicable in the immigration context.

Singh further argues that courts have recognized in other contexts the legal custody maintained by federal authorities over federal detainees in local facilities, and have permitted such federal officials to be named as respondents. Opp. at 4-5. Singh mentions cases in which the Office of Refugee Resettlement contracted with private facilities to house minors, and cites *Maldonado v. Lloyd*, No. 18 Civ. 3089 (JFK), 2018 WL 2089348 (S.D.N.Y. May 4, 2018) as an example. Opp. at 4-5. The Court is unpersuaded by this argument for two independent reasons. First, as Respondents note in their brief in support of their Motion to Dismiss, the Government may waive objections under the immediate custodian rule in specific cases (and it has not done so here). Dkt. 11 at 12 n.2; *see Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d Cir. 2011). There is no indication in the district court's opinion in *Maldonado* or from that case's docket sheet that the Government raised the immediate custodian rule, presumably because that petitioner was located at a facility within this District. Thus, the district court in *Maldonado* appeared to have no reason to consider the immediate custodian issue before this Court now. Second, insofar that Singh has a preference for application of the legal control theory, *Padilla* rejected such a theory for core habeas proceedings. *See* 542 U.S. at 439 ("As we have explained, identification of the party exercising legal control only comes into play when there is no immediate physical custodian with respect to the challenged 'custody.'"). As *Padilla* instructed, it is the "immediate custodian, not a supervisory official who exercises legal control, [who] is the proper respondent." *Id.* Here, Respondents have invoked the immediate custodian rule, and the Court is required to apply it.

Lastly, Singh cites to the general principle that the purpose of a habeas corpus petition is to curb the power of those it is designed to restrain. *See* Opp. at 5 (citing *Boumediene v. Bush*, 553

U.S. 723, 765-66 (2008)).  Singh reasons that policy concerns underlying these types of petitions should persuade the Court to adopt the minority view and find venue to be proper in this District. *Id*.  Singh posits that it is "fundamentally unfair" to force indigent petitioners like himself to start anew in a different district.  *Id.*  The Court rejects this argument, as well.  First, Singh could have brought his habeas petition in the first instance in the district of his confinement, the District of New Jersey.  Second, and most importantly, the Court cannot deviate from Supreme Court precedent in favor of a litigant's cited public policy considerations.

### III.   Conclusion

Because Singh was detained at the Bergen County Jail at the time he filed the Petition, this Court lacks jurisdiction over this case.  Since the Petition should have been brought in the first instance in the United States District Court for the District of New Jersey, the Court finds that it is in the best interest of justice to transfer this action pursuant to 28 U.S.C. § 1406(a).  Accordingly, Respondents' motion to transfer the case is GRANTED.

The Clerk of the Court is respectfully directed to terminate all pending motions and transfer this case to the United States District Court for the District of New Jersey.  To ensure that Singh's habeas petition is heard in the proper forum without undue delay, this Court further finds that the seven-day waiting period in Local Civil Rule 83.1 should be waived, and this case should be promptly transferred.

SO ORDERED.

Dated: January 4, 2021
     New York, New York
                                                JOHN P. CRONAN
                                    United States District Judge